UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

| | | |
|---|---|---|
| JEFFREY GABBARD, | : | Case No. 3:11-cv-426 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS FOUND NOT
SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; AND
(2) JUDGMENT SHALL BE ENTERED IN FAVOR OF PLAINTIFF
AWARDING BENEFITS**

This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and

therefore unentitled to disability insurance benefits ("DIB").  (*See* Administrative

Transcript ("Tr.") (Tr. 861-873) (ALJ's decision)).

**I.**

On November 5, 2004, Plaintiff applied for DIB, alleging a disability onset date of

June 9, 2001.  (Tr. 77-80).[1]  Plaintiff alleged disability due to pain in his back and right

---

[1]      Plaintiff's application is dated November 19, 2004, but he established a protective
filing date of November 5, 2004 through contact with the Social Security Administration.  (Tr.
80).  Plaintiff had two prior applications which were denied on administrative review in 2002 and
2003.  (Tr. 43-47, 71-76).  These prior applications alleged the same onset date as the 2004
application and were then *de facto* reopened because the entire period back to June 9, 2001 was
adjudicated without the invocation of *res judicata*.  *Crady v. Sec'y of HHS*, 835 F.2d 617,  620
(6th Cir. 1987).  The cases were reopened for good cause on the introduction of new evidence.
20 C.F.R. §  404.988(a)(1)&(b).

hip, hypertension, and depression.  (Tr. 869).  On March 17, 2008, Plaintiff had a hearing

before an ALJ where he was represented by counsel.  (Tr. 834).  A vocational expert

("VE") also appeared and testified.  (*Id*.)  The ALJ denied Plaintiff's claim via written

decision dated November 9, 2010.  The Appeals Council declined to review the decision.

(Tr. 13A, 8-11).

Plaintiff then filed a complaint and statement of errors with this Court alleging that

the ALJ erred in his analysis of treating source opinions and failed to craft a decision

supported by substantial evidence.  The parties then entered an agreed motion for remand

which resulted in the Court issuing a Remand Order, sending Plaintiff's claim back to the

agency for further proceedings.  (Tr. 878-880).  In response to this Court's Remand

Order, the Appeals Council ordered the claim referred back to an ALJ.  (Tr. 883-884).

On July 14, 2011, another hearing was held before a different ALJ.  (Tr. 1135).

Plaintiff was again represented by counsel and a VE testified.  (*Id*.)  The ALJ denied

Plaintiff's claim for benefits via written decision on September 20, 2011.  (Tr. 858-873).

The case is now before this Court for the second time to review the ALJ's decision.  *See*

42 U.S.C. §§ 405(g), 1383(c)(3).

At the time of Plaintiff's alleged onset date, he was 44 years old and was

considered to be a "younger person" for Social Security purposes.  *See* 20 C.F.R.

§§ 404.1563(c); 416.963(c).  In September 2006, Plaintiff turned 50 and became a person

"closely approaching advanced age."  *See* 20 C.F.R. § 404.1563(d).  Plaintiff has a high

school education.  (Tr. 1137).  His past relevant work was as a maintenance machine repairer and an animal caretaker.  (Tr. 41, 852).

The ALJ's "Findings," which represent the rationale of her decision, were as follows:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 9, 2001 through his date last insured of December 31, 2007 (20 CFR 404.1571 *et seq*.).

3.    Through the date last insured, the claimant had the following severe impairments: residuals of right hip fracture and replacement; residuals of right elbow fracture; and depression (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medially equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity[2] to perform light work as defined in 20 CFR 404.1567(b) except change positions between sitting and standing every 30 minutes; no foot controls on the right; no squatting, crawling or kneeling; no greater than occasional stooping and crouching; unskilled, low stress work with no assembly line production quotas, and no fast pace.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on September 29, 1956 and was a younger individual age 18-49 at the alleged onset date.  The claimant subsequently

_____

[2]    A claimant's residual functional capacity ("RFC") is an assessment of "the most [he] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).

-3-

changed age category to closely approaching advanced age prior to the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant had transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from June 9, 2001, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

(Tr. 863-872).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations, and was therefore not entitled to DIB. (Tr. 873).

On appeal, Plaintiff argues that: (1) the ALJ erred when she failed to meaningfully follow the instruction on remand to reconsider all opinion evidence; (2) the ALJ erred when she refused to consider any medical evidence which referenced a time period after Plaintiff's date last insured; and (3) the ALJ erred because the RFC is not supported by substantial evidence. The Court will address each error in turn.

-4-

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

## A.

The record reflects that:

Plaintiff's difficulties began when a wall fell on him at work and crushed his right hip and right arm.  (Tr. 338).  He was admitted to the hospital on July 8, 1999, and his elbow and hip were surgically repaired.  (Tr. 288, 292).  As Plaintiff described it, his acetabulum[3] was crushed, and this had to be surgically reconstructed with steel plates and pins.  He spent a month in the hospital for rehabilitation.  (Tr. 278).  Almost a year later, Plaintiff attempted to return to his previous job, but his hip pain worsened.

When Plaintiff was evaluated by Dr. Johnson in November 2001, he reported constant pain in his right hip that was aggravated by weight bearing.  The pain traveled to his lower back.  He also had constant numbness in the first and second toes of his right foot.  He was told he would need a hip replacement.  (Tr. 338).  On examination, Dr. Johnson noted that there was a leg length discrepancy.  While sensation was reasonably intact, there was weakness in the right hip with right hip flexion as well as dorsiflexion of the right foot, both rated as 4/5.  Plaintiff experienced right hip pain with motor function testing, and could not fully extend his right arm.  (Tr. 340).  Plaintiff also had difficulty with heel-to-toe walking secondary to instability.  (Tr. 341).

Plaintiff's treating orthopedist, Dr. Lochner, noted in February 2001 that Plaintiff would need a hip replacement.  Dr. Lochner prescribed Vicodin every six hours as

---

[3] The acetabulum is the cup-shaped cavity at the base of the hipbone into which the ball-shaped head of the femur fits.

needed. (Tr. 412). Examinations over the following year continued to show that Plaintiff walked with a significant limp and eventually needed a cane to walk. (Tr. 406-11). By February 2002, Plaintiff reported to Dr. Lochner that he was having increasing pain in the right hip. X-rays showed that one of the screws to the fixation plate had broken. The x-ray also showed progression to a complete loss of joint space. Dr. Lochner felt a right hip replacement was in order. (Tr. 404). Unfortunately, the surgery could not be carried out until September 20, 2002. (Tr. 346).

Plaintiff did well initially following surgery. His swelling had resolved and his incision was well healed. Dr. Lochner put Plaintiff on partial weight bearing with his crutches. (Tr. 401). Five weeks after surgery, Plaintiff still had some moderate discomfort, especially with weather changes, but he was walking better and was occasionally able to walk without aids around his house. His gait was fairly antalgic on examination. His hip x-rays showed good position of the hip components. Dr. Lochner wanted Plaintiff to continue using the cane. (Tr. 400). By November 2002, Plaintiff began to experience an increase in pain, and by February 2003, Dr. Lochner noted some atrophy in the right leg from decreased use. (Tr. 399). Dr. Lochner recommended physical therapy to strengthen the muscles in the hips and continued use of the cane. (Tr. 397). Plaintiff had some improvement with the therapy but he still needed a cane to ambulate. (Tr. 396). An MRI of the lumbar spine showed moderate facet degenerative changes from L2 through S1. (Tr. 395).

-7-

In July 2003, Plaintiff reported continued pain primarily in his low back.  His case manager had recommended an evaluation by Dr. Gomaa, a pain specialist.  Dr. Lochner noted, "I think that it would be reasonable to obtain this evaluation and review any recommendations."  (Tr. 392).  Dr. Lochner indicated that Plaintiff would continue to need his cane.  (*Id.*)

Plaintiff began seeing Dr. Gomaa in August 2003.  (Tr. 650-52).  At that time, Plaintiff reported pain in his right hip, right groin, low back, and left elbow.  His low back and right groin pain were the most severe.  (Tr. 650).  Dr. Gomaa tried Plaintiff on a number of medications including Methadone, Gabitril, Paxil, Zanaflex, and Celebrex.  As early as January 22, 2004, Dr. Gomaa indicated Plaintiff should not lift over ten pounds and should avoid walking on uneven terrain.  (Tr. 649).  Treatment records through 2005 and 2006 continued to document pain.  (Tr. 486-647).  He was treated with physical therapy.  (Tr. 653-58).  Clinical findings showed marked restriction of motion of the lower back; reduced range of motion of the right hip and lumbar spine; superficial and deep muscle spasms of the right lumbar muscles; marked leg discrepancy; and radiating pain in the left buttocks and thigh.  (Tr. 648).

Plaintiff continued to treat in Dr. Gomaa's office.  Examinations continued to show weakness in the lower extremities.  For example, in May 2006, Dr. Gomaa rated the hip flexors on the right at 3/5, the quadriceps at 4/5, and other muscles 3-4/5.  (Tr. 521).

Plaintiff was evaluated by a chiropractor in Dr. Gomaa's office in June 2006. This examination showed some decrease in flexion of the trunk and some weakness in the hip flexors, extensors, and adductors. (Tr. 504). Plaintiff had a moderate limp and needed a cane for walking more than three blocks. (Tr. 506). It was also noted that Plaintiff could not sit comfortably for any length of time. The chiropractor concluded, "It is this evaluator's opinion that given the restrictions in both sitting and in upright positions, that finding employment that Mr. Gabbard could sustain long term is remote." (Tr. 507).

In March 2005, Plaintiff was sent for consultative examination with Dr. Ray, at the request of State Agency. (Tr. 426-33). On examination, Dr. Ray noted that Plaintiff ambulated short distances in the office with a mild to moderate right antalgic gait pattern. He had difficulty walking on his heels and toes and his right leg was about three-quarter inches shorter than the left leg. On examination of the spine there was mild malalignment and pain with motion of the right hip. (Tr. 427). There was decreased strength in the right hip, knee, and foot. (Tr. 430). Plaintiff continued having difficulty fully extending his right arm. (Tr. 432).

In March 2005, Plaintiff began seeing an orthopedist. (Tr. 473-75). On hip examination, Plaintiff could ascend and descend stairs foot-over-foot using a banister or an assistive device. He was unable to sit comfortably in any chair and had difficulty putting on his socks or tying his shoes on the right. Plaintiff reported that he needed one cane for walking most of the time. Straight leg raising was weakly positive and a moderate limp was observable. Range of motion of the right hip was limited and x-rays

showed the total hip replacement was in satisfactory position. (Tr. 474). When seen three months later by Dr. Lombardi. Dr. Lombardi felt Plaintiff might have trochanteric bursitis and referred him to Dr. Otis, for a neuro-orthopedic evaluation and EMG. (Tr. 470).

Meanwhile, Plaintiff underwent an independent medical examination in conjunction with his Workman's Compensation Claim. He was examined by Dr. Hofmann in May 2005. (Tr. 691-98). On examination, Dr. Hofmann noted some leg length discrepancy. (Tr. 693). Plaintiff was not able to walk on his tiptoes and heels without holding on to the examination table, and there was tenderness over the lumbar spine, the upper sacrum, and the right gluteal area extending into the right hip. There was decrease in range of motion of the lumbar spine and Dr. Hofmann also noted a visible and palpable atrophy of the right thigh. The atrophy was over ten centimeters when compared to the left. (Tr. 694).

Dr. Otis saw Plaintiff on August 3, 2005. Dr. Otis noted that Plaintiff's gait was slow, deliberate, and antalgic. Plaintiff favored the right leg, and was able to walk on his heels and toes and perform a squat with the doctors' assistance. Dr. Otis noted that on palpatory examination of the lumbar spine the pain was localized in the right trochanteric bursa and gluteus medius. Lumbar range of motion was somewhat limited. (Tr. 483). Dr. Otis suspected that Plaintiff's pain was strictly orthopedic in nature. He did note that there was a mild weakness in the right ankle dorsiflexors but he felt this was likely related to an old peroneal nerve palsy caused by his hip fracture. (Tr. 484). An EMG confirmed

a chronic right sciatic nerve palsy, most likely involving the lateral (peroneal) division at the hip. (Tr. 481).

In December 2005, Plaintiff underwent another independent medical examination, this time by Dr. Franklin. (Tr. 703-07). On physical examination, Dr. Franklin noted that Plaintiff walked with a markedly antalgic gait characterized by rapid swing phase of the left lower extremity. He was not able to stand on his heels or toes due to right hip pain. Examination of the lumbar spine and right hip revealed decreased range of motion. The left shoulder showed some tenderness in the left subacromial space. (Tr. 706).

Plaintiff was seen for second and third opinions concerning his hip pain. In August 2006, the Cleveland Clinic ruled out a loosening of the prosthetic joint and infection. (Tr. 798, 815). Examination continued to show a three-quarter inch leg length discrepancy, marked tenderness of the hip, decreased range of motion in the hip, numbness along the right sciatic nerve, and some decrease in ankle dorsiflexion on the right. X-rays showed the "previous massive pelvic injury. He has broken screws, plates." (Tr. 802). Dr. Brooks noted that there was some prominence of the anterior lip of the acetabulum "which could conceivably be causing some psoas tendonitis." (*Id.*) In April 2007, Douglas C. Gula, D.O. noted Plaintiff had marked tenderness in the right groin region. Range of motion of the hip was limited due to pain and the pain radiated into the low back region. Dr. Gula felt that Plaintiff's treatment options were limited and Plaintiff would need to live with the pain. (Tr. 727).

In December 2006, Plaintiff's pain management was picked up by W. Douglas Ross, D.O.  Physical examination showed marked tenderness in the right lumbar paraspinal area, marked tenderness in the lumbar facet joints, marked tenderness of the right sacroiliac joint.  (Tr. 672).  Dr. Ross recommended as a goal an increase in Plaintiff's ability to self-manage his pain and related problems.  He recommended a right sacroiliac joint injection, physical therapy, and medication.  (Tr. 672).  Additional examination showed little change in Plaintiff's condition.  (Tr. 661-70).

In December 2007, the ALJ sent Plaintiff for an additional consultative examination, this time by Dr. Smith.  (Tr. 673-85).  At that evaluation, Plaintiff reported that he had stopped taking all his pain medications because he did not like how he felt taking them.  Plaintiff reported he could stand for about one hour and walk for about a mile without resting.  He could only sit for fifteen to twenty minutes without having to get up and change positions.  Plaintiff reported that he used a cane most of the time and he could lift and carry up to 50 pounds.  (Tr. 673).  On examination, Dr. Smith noted Plaintiff seemed like a sincere gentleman.  He noted Plaintiff's right leg was three-quarters of an inch shorter than this left and he walked with a limp of the right leg.  He was unable to do rapid alternating movements with the right foot.  He could raise up on his toes, but not on his heels.  Examination showed weakness in the hip flexors and knee flexors, at 4/5.  There was some hypoalgesia to pin over the right posterior calf, heel, big toe, and second and third toes of the right foot.  Position and vibratory sensation was decreased in the right big toe.  (Tr. 674).  Dr. Smith noted Plaintiff was extremely tender

over the right trochanteric bursa and range of motion of the right hip was limited.  (Tr. 674-75).

Plaintiff continued pain management with Dr. Ross, with little change in his condition.  (Tr. 743-66; 794-97).

At the 2010 hearing, Plaintiff testified that pain in his lower right back, right buttock, right groin, and right leg was the primary reason he could not work.[4]  (Tr. 837). Despite injections, pain medications, hip replacement, and physical therapy, his pain continued.  (Tr. 838-39).  Plaintiff testified that pain prevents him from walking more than 20 minutes, standing more than five minutes, or sitting more than ten minutes at a time.  (Tr. 844).  Plaintiff estimated he could lift twenty pounds, but, he would not want to do so a lot.  (Tr. 845, 849).  He lifted fifty pounds once in physical therapy but he could not lift that much comfortably.  (Tr. 849).

A VE testified at the hearing.  (Tr. 852-56).  The VE was asked to consider a person limited in the manner ultimately found by the ALJ.  (Tr. 853).  The VE believed that there were other jobs available at the sedentary, light, and medium levels of exertion. If the person were limited as described by Drs. Hofmann or Gomaa, then the person would not be able to perform full-time work.  (Tr. 854).  If the person had no useful

---

[4]    Plaintiff also testified that he was depressed, which is documented in the treatment record.  (Tr. 371-85, 784-90, 821-27, 841).  Multiple psychological evaluations have also confirmed Plaintiff's depression.  (Tr. 355-70, 434-39, 699-702, 708-12, 713-16, 717-24, 725-42).  Because of his depression, the ALJ limited Plaintiff to low stress work, that is, no dealing with the public, no fast paced work, no production quotas, and no jobs involving teamwork. (Tr. 22-23).

ability to deal with work stresses or maintain attention and concentration, then all jobs would be eliminated.  (Tr. 855-56).

**Plaintiff's Testimony from the 2011 Hearing**

Plaintiff testified that his right hip is constantly very painful.  (Tr. 1140).  "I mean, it hurts, but everything I do. I'm sitting here and I'm hurting. I can breath and I hurt. It just – I just hurt all the time."  (Tr. 1149).  He has been on narcotic pain medications, but tries to limit his intake because they impair his memory and focus.  (Tr. 1140-1141).  Plaintiff has a very pronounced limp and cannot walk or stand comfortably.  (Tr. 1142).  He has trouble with his right leg when he walks and falls down at least once per week.  (Tr. 1148).  Plaintiff believes he can walk about a block, sit for about 30 minutes, and lift about 10 pounds.  (*Id*.)  He also described weakness in his right arm.  (Tr. 1147).

Plaintiff testified that he is unable to do household chores and relies on his wife to make meals for him.  (Tr. 1144).  He spends about ten hours per day laying down because it takes the pressure off his hip.  (Tr. 1147).  Plaintiff believes his pain became a lot worse between the 2008 hearing and his 2011 hearing.  (Tr. 1148).  He also noted that he takes medicine for high blood pressure.  (Tr. 1151).

Plaintiff stated that he had a lot of problems dressing, especially putting on socks.  (Tr. 870).  He claimed that he has no energy, is in a foul mood on an average day, and wishes he were dead daily.  (*Id*.)  He does not cook and prefers to stay home.  (*Id*.)  On a typical day, he got up at 1:00 to 2:00 p.m., turned on the television, and laid down on the floor or couch.  (*Id*.)  He walked the dog while driving a golf cart.  (*Id*.)  He saw his

children about once a month and did not see friends. (*Id.*) He slept one to two hours at a time and spent most of the time on the floor and on his knees with his head in the chair. (*Id.*)

### Medical Evidence Added Between the 2008 Hearing and the 2011 Hearing

On March 17, 2008, Dr. Ross wrote a letter indicating that because of Plaintiff's uncontrolled pain he can sit for only fifteen minutes, stand less than an hour, and needs to use a cane. (Tr. 934).

On June 12, 2008, Plaintiff was examined by clinical psychologist Dr. Reed for the Ohio Bureau of Workers Compensation. (Tr. 935-943). Dr. Reed observed that Plaintiff's gait was slowed and he fidgeted often due to pain. (Tr. 938). A valid MMPI-2 performed by Dr. Reed revealed that Plaintiff is experiencing very high levels of psychological difficulty. (Tr. 940-941). After reviewing Plaintiff's psychological records back to 2004, Dr. Reed concluded that Plaintiff's psychological functioning had not changed and is unlikely to improve as long as his pain continues. (Tr. 941-942). Ultimately, Dr. Reed opined that Plaintiff could only work "if he could get his pain under control" and even then he would need "limited hours." (Tr. 942).

From April through September 2008, Plaintiff went through a course of physical therapy through Oxford Physical Therapy Centers. (Tr. 1091-96). Again, Plaintiff described constant right hip pain which became sharp with movement. (Tr. 1092). Examination revealed tenderness, a palpable trigger point, and bilateral sacral iliac joint restriction. (*Id.*)

In April and May of 2009, Plaintiff underwent a vocational evaluation through the ProWork Center at Miami Valley Hospital. (Tr. 944-959). Through the evaluation, it was determined that Plaintiff would be limited to "light, primarily sedentary employment." (Tr. 950). During this time, Plaintiff was also participating in work conditioning therapy. (Tr. 960-996). The therapy helped increase Plaintiff's lifting tolerance; however, he continued to have issues with extended walking and exhibited no more than 1 hour of standing or sitting tolerance. (Tr. 961-963). In February 2011, Plaintiff reported to the emergency room with increased pain after falling on some ice. (Tr. 1077-1078). An x-ray revealed no acute injury related to Plaintiff's fall. (*Id.*)

Following his first hearing, Plaintiff continued to treat with Dr. Ramirez. (Tr. 1046-1056, 1100-1101). Dr. Ramirez's treatment notes that Plaintiff was still experiencing chronic pain and depression which were amplified by activity, the weather, and daily activity/stressors. (Tr. 1046-1050, 1100-1101).

From 2008 through the date of his hearing before ALJ Lombardo, Plaintiff also continued to treat with pain management physician Dr. Ross. (Tr. 1002-1034, 1077-1090). In visits with Dr. Ross, Plaintiff consistently reported pain in his low back and right hip which radiated down his right leg. (Tr. 1003, 1005, 1008). Dr. Ross also observed clinical signs and symptoms consistent with Plaintiff's reports of pain, such as a limping/antalgic gait, decreased range of motion in Plaintiff's right hip, positive Faber maneuvers, atrophy of Plaintiff's quadriceps and hip adductors, muscle spasms, diminished sensation/reflexes, and tenderness at Plaintiff's right trochanter and iliolumbar

region. (Tr. 1003, 1006, 1009-10). At times, Dr. Ross also noted Plaintiff exhibiting signs of depression such as a flat affect and depressed mood. (Tr. 1025, 1028, 1031). On September 14, 2009, Dr. Ross filled out a letter indicating that Plaintiff is unable to walk more than fifteen feet. (Tr. 1011).

Additional notes from treating psychologist Dr. Bromberg through July of 2011 were also added to the record following Plaintiff's 2008 hearing. (Tr. 1057-1076, 1102). More recent notes reflected Plaintiff making some progress in addressing his psychological problems. (Tr. 1057-1063). Notes from 2005-2007, however, revealed significant depression marked by crying spells, psychomotor agitation, inconsistent concentration, and an irritable mood. (Tr. 1065-1071). Dr. Bromberg also noted pain behavior including grimacing and difficulty sitting. (Tr. 1071).

**Physician Opinion Evidence**

Multiple physicians have offered opinions regarding Plaintiff's functional capacity:

- Dr. Mary Johnson, Agency Consulting Examiner 2001: limited to lifting 30 lbs., standing or walking 2 hours per day in 15 minute intervals, "the patient is felt to be capable of performing sedentary work-related activities." (Tr. 341).

- State Agency Reviewing Physicians 2003 & 2005: limited to lifting 20 lbs. occasionally and 10 lbs. frequently, stand/walk about 4 or 6 hours per day, sit about 6 hours per day. (Tr. 350-354, 440-448).

- Dr. Ronald Cantor, Agency Consulting Examiner 2005: can sit or stand for 1 hour at a time, walk for 15 minutes at a time, lift/carry up to 10 lbs. (Tr. 428).

-17-

- Dr. Rudolf Hofmann, BWC Orthopedic Examiner 2005: limited to 2 hours standing/walking per day in 15 minute increments, 4 hours sitting in an 8 hour workday, maximum lift/carry 10 lbs., no stooping, climbing, squatting, and kneeling. (Tr. 697).

- Dr. Laila Gomaa, Treating Physician 2005: lift/carry 10 lbs. occasionally and 5 lbs. frequently, 2 hours standing/walking per day in 15 minute increments, 3 hours sitting per day in 20 minute increments, no crouch, crawl, kneel, balance, climb, or stoop, cannot sustain sedentary, light, or medium work. (Tr. 562-566).

- Dr. Daniel Fanklin, BWC Examiner 2005: maximum lift 10-15 lbs., weight bearing limited to 1.5 to 2 hours per day, no rapid, repetitive work involving the upper extremities, "would be considered sedentary to light work" (Tr. 707).

- Dr. Willaim Smith, Agency Consulting Examiner 2007: lift/carry 10 lbs. frequently and 11 to 20 or 21 to 50 lbs. occasionally, sit for 2 hours per day in 15 minute intervals, stand or walk for 4 hours per day in 1 hour increments, requires a cane to ambulate, cannot walk a block at a reasonable pace on rough or uneven surfaces. (Tr. 680-685).

- Dr. William Ross, Treating Physician 2008 & 2009: sit for 15 minutes, stand for less than one hour, uses a cane, cannot walk greater than 15 feet. (Tr. 814, 1011).

- Dr. Linda Reed, BWC Psychological Examiner 2008: Plaintiff could work a job with "limited hours" if his pain were to come under control. (Tr. 942).

- Dr. Richard Bromberg, Treating Psychologist 2008: Plaintiff has "no useful ability" in dealing with work stresses, maintaining attention/concentration, behaving in an emotionally stable manner, and relating predictably in social situations. (Tr. 791-793).

- Dr. Peter Ramirez, Treating Psychologist 2008: Plaintiff has "no useful ability" in following work rules, dealing with the public, dealing with work stresses, maintaining attention/concentration, relating predictably in social situations, and demonstrating reliability. (Tr. 791-793).

**Remand of the 2008 ALJ Decision**

In agreeing to remand the 2008 ALJ decision for further administrative proceedings, the parties stated, "On remand, the ALJ will reconsider all medical opinion evidence, including the opinions of Drs. Hoffman, Franklin, and Johnson." (Tr. 879). The Appeals Council's Order effectuating the Court's remand reads:

> The hearing decision does not contain an evaluation of the treating source opinions. The opinions of Drs. Hoffman, Franklin and Johnson have not been considered in the assessment of the claimant's residual functional capacity and these opinions are not consistent with the findings in the decision that the claimant has been capable of work at the medium level. Dr. Hoffman opines that the claimant is limited to lifting less than 10 pounds. (Tr. 697). Drs. Franklin and Johnson opine that claimant would be limited to sedentary work. (Tr. 341 and 707). Consequently, resolution of these conflicting opinions is in order.

(Tr. 883).

**ALJ Lombardo's 2011 Decision**

ALJ Lombardo expressly limits her analysis of Plaintiff's impairments and the medical evidence of record to the period between June 9, 2001 and December 31, 2007. (Tr. 861). During that time period, ALJ Lombardo finds that Plaintiff suffered from the severe impairments of the residuals of a right hip fracture and replacement, the residuals of a right elbow fracture, and depression, but also finds that none of those conditions met or equaled a listing. (Tr. 863-865). The ALJ's RFC finding reads:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except change positions between sitting and standing every 30 minutes; no foot controls on the right; no squatting, crawling or kneeling; no greater than occasional stooping

-19-

and crouching; unskilled, low stress work with no assembly line
production quotas, and no fast pace.

(Tr. 866).

In light of the assigned RFC, the ALJ determined that Plaintiff is unable to
perform his past relevant work as a setting machine operator. (Tr. 871). However, the
ALJ found that there are other jobs which exist in the national economy that Plaintiff can
perform such as small parts assembler, housekeeper, and sales attendant. (Tr. 871-872).
As a result, the ALJ held that Plaintiff was not under a disability. (Tr. 872).

**B.**

First, Plaintiff alleges that the ALJ failed to meaningfully follow the instruction on
remand to reconsider all opinion evidence. The Court agrees.

The 2008 Agreed Motion for Remand was very clear: "On remand, the ALJ will
reconsider *all medical opinion evidence*, including the opinions of Drs. Hoffman,
Franklin, and Johnson." (Tr. 879) (emphasis added).[5] However, in ALJ Lombardo's
decision, she states "All treating source opinions were discussed and weighed in the prior
decision and no issue was taken by the Court with regard to that." (Tr. 866).

It was the Commissioner's position in 2010 that ALJ Padilla had not properly
weighed the opinion evidence. The Court accepted this position both by remanding the
case for further consideration and by awarding Plaintiff attorney fees under the Equal
Access to Justice Act upon a finding that the Commissioner's position was unreasonable.

---

[5]   The Appeals Council's Remand Order effectuating the Agreed Motion for Remand
confused matters by specifically referencing "treating source opinions" and not using the
language of the remand order. (Tr. 883).

(*See* Case No. 3:09cv236 at Docs. 14, 17).  Now the Commissioner essentially asks that the Court affirm ALJ Padilla's opinion because ALJ Lombardo has adopted the same.

Since ALJ Lombardo improperly thought the failure to address the opinions of Drs. Hoffman, Franklin, and Johnson served as the sole basis for remand, she does not meaningfully revisit the opinions of Plaintiff's treating physicians, Drs. Gomaa and Ross. With respect to Dr. Gomaa, ALJ Lombardo adopts ALJ Padilla's finding regarding Plaintiff's foot drop.  (Tr. 24, 867).  Similarly, for Dr. Ross, ALJ Lombardo refers to ALJ Padilla's decision noting "Issues with limping and using a cane were addressed in the prior decision and multiple inconsistencies noted."  (Tr. 866).  ALJ Lombardo does not even begin to address the weight due to the specific standing, sitting, and walking limitations Dr. Ross identifies.  (Tr. 814, 1011).  Where this Court has directed a reconsideration of "all opinion evidence," ALJ Lombardo's failure to meaningfully reconsider the opinions of Plaintiff's treating physicians is a failure to apply the correct legal standard and results in a decision lacking substantial evidentiary support.

ALJ Lombardo also failed to reconsider the mental health evidence of record.  ALJ Lombardo notes "The Court did not raise any issue with the prior decision findings on mental impairment."  (Tr. 865).  However, the Court directed a reconsideration of all opinion evidence, not just the physical capacity evaluations of the three identified physicians.  (Tr. 879).  A reconsideration of all opinion evidence would have included reconsideration of the opinions of Drs. Bromberg, Reed, and Ramierez regarding

-21-

Plaintiff's mental functioning.  (Tr. 791-793).  This represents further error as these doctors have all identified mental health limitations which may very well preclude fulltime, competitive employment.  (Tr. 791-793).[6]  Defendant's assertion that a *de novo* review of all the mental health evidence should be read into ALJ Lombardo's finding of mild social limitations is improper.  (Doc. 10 at 15).  This is particularly true as ALJ Lombardo expressly stated that she did not see a need to reconsider ALJ Padilla's mental health findings or the weight given to the opinions of Plaintiff's treating sources.  (Tr. 865-66).

The ALJ also fails to reconsider the opinion of Dr. Smith.  ALJ Lombardo notes that ALJ Padilla's assignment of a medium RFC appears to have been based on Dr. Smith's report, but makes no other mention of the physician's opinions.  (Tr. 866).  This is significant because Dr. Smith opined to very specific limitations regarding Plaintiff's ability to stand, walk, and sit, which conflict with the RFC that ALJ Lombardo assigns.  ALJ Lombardo determined that Plaintiff can do light work with the option to sit or stand at 30 minute intervals.  (Tr. 866).  Dr. Smith, however, identified a need for Plaintiff to stop sitting after 15, rather than 30 minutes.  (Tr. 681).  Similarly, Dr. Smith opined that Plaintiff can sit and stand for a combination of only 6 hours in an 8 hour workday.  (*Id*.)

---

[6]     For example, Dr. Bromberg notes that Plaintiff has "no useful ability" in dealing with work stresses, maintaining attention/concentration, behaving in an emotionally stable manner, and relating predictably in social situations.  (Tr. 791-793).  Dr. Ramirez adds that Plaintiff has "no useful ability" to follow work rules or demonstrate reliability.  (Tr. 818-820).  Dr. Reed indicates Plaintiff's need for "limited hours."  (Tr. 942).

It was error for ALJ Padilla not to address this conflict and that error has been compounded by ALJ Lombardo who was specifically directed by this Court to reconsider all the opinion evidence and failed to do so.

Plaintiff's application for disability benefits has been pending before the Commissioner for nearly eight years. Defendant's first ALJ erred to such an extent that the Commissioner was compelled to ask the Court to reverse and remand the claim. Now, nearly a decade later, a subsequent agency ALJ misinterpreted the purpose and extent of the prior remand and drafted yet another decision which fails to comport to the relevant legal frameworks.

ALJ Lombardo was required to reconsider all of the opinion evidence and it is clear from the express language of her decision that she failed to do so. Accordingly, the ALJ's decision is reversed.

## C.

Next, Plaintiff alleges that the ALJ refused to consider any medical evidence which referenced a time period after Plaintiff's date last insured. In bold letters at the beginning of her decision, ALJ Lombardo indicates that her decision pertains only to the period from June 9, 2001 through December 31, 2007. (Tr. 861). As a result, ALJ Lombardo failed to consider over one hundred pages of medical records. (Tr. 864).

Although Plaintiff needs to establish an onset of disability before December 31, 2007 to receive benefits, that does not render any evidence from after that date *de facto*

irrelevant. In fact, the Sixth Circuit has noted that evidence of a claimant's medical condition after insurance cutoff must be considered to the extent that it illuminates a claimant's health before that date. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). ALJ Lombardo has not articulated any reason for ignoring the substance of the medical records other than the fact that they are from after Plaintiff's date last insured. However, this evidence is significant as the persistence and consistency of Plaintiff's complaints of pain as well as the positive clinical findings following December 31, 2007, bolster the credibility of his allegations and provide additional evidentiary support for the opinions of his physicians.

The exhibits need not show "deterioration" or the development of a "more serious condition" to be relevant evidence. (Tr. 871). Rather, the exhibits are relevant and merit meaningful consideration to the extent that they bolster the credibility of Plaintiff's allegations and provide further objective and clinical support for the opinions of Plaintiff's physicians. At the very least, ALJ Lombardo failed to adequately articulate her weighing of the facts in the exhibits. In fact, it is unclear whether she even looked at the exhibits.

ALJ Lombardo's rational states nothing more than that the evidence following the date last insured need not be considered. (Tr. 861). This represents a clear failure to apply the correct legal standard and warrants reversal.

-24-

**D.**

Finally, Plaintiff maintains that the ALJ erred when he assigned an RFC that is not supported by substantial evidence.

The ALJ determined that Plaintiff could perform light work, but was further limited in that he needed to change positions between sitting and standing every 30 minutes; could not use foot controls with his right leg, squat, crawl or kneel; could only occasionally stoop and crouch; and was limited to unskilled, low-stress work with no assembly line production quotas, and no fast pace.  (Tr. 866).  The ALJ claims that Plaintiff's credibility limitations, including evidence suggesting symptom magnification and substance abuse, objective medical evidence, and Plaintiff's activities of daily living support her RFC determination.

Specifically, the ALJ notes that "[t]here were credibly issues in this case," pointing to Dr. Otis' observation of positive Waddell signs, "indicating exaggeration of physical symptoms," during examinations in August and September 2005.  (Tr. 478, 483, 867-68). Additionally, Dr. Howard noted that MMPI-2 testing showed some symptom magnification (Tr. 28, 736), and the Structured Inventory of Malingered Symptomotology was "suspicious for a malingering tendency" (Tr. 737).  Dr. Madrigal concluded that Plaintiff had "a tendency to exaggerate his symptoms" (Tr. 28, 701), and Dr. Deardorff indicated that Plaintiff's MMPI-2 profiled was "of questionable validity" (Tr. 28, 711). The ALJ also noted that Plaintiff "had a substantial polysubstance abuse problem that

-25-

complicated the veracity of his allegations of pain." (Tr. 868, 871).

However, these adverse credibility factors are insufficient to establish substantial evidentiary support for the assigned RFC. For an ALJ's finding to be supported by substantial evidence, there must be adequate evidence to support that finding when considered in light of the record as a whole. *Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1028 (6th Cir. 1990). The fact that Plaintiff has a history of poly-substance abuse does not diminish his claim to benefits absent a finding that said history is material under Social Security's regulations. *See* 20 C.F.R. § 404.1535(b) and EM-96200. Further, even if ALJ Lombardo had legitimate reasons to question Plaintiff's credibility, that does not support her rejection of the medical opinion evidence that contradicts a finding that Plaintiff can sustain fulltime light work.

Moreover, the isolated medical evidence Defendant cites is not even relevant to ALJ Lombardo's RFC finding. For example, absence of "arm weakness" in some of Dr. Ross' treatment notes, a negative pelvic x-ray, and a lack of "bursal sac fluid collection" simply do not sustain the premise that Plaintiff can sustain the "good deal of standing or walking" required for light work. 20 CFR § 404.1567(b). At the very least, the ALJ was not permitted to substitute her analysis of this medical evidence for the opinions of multiple treating an examining medical professionals. *Hall v. Celebreeze*, 314 F.2d 686, 690 (6th Cir. 1963).

The ALJ fails to explain how the medical evidence supports her finding that Plaintiff can perform a reduced range of fulltime, competitive work at the light level of exertion. In fact, the only medical evidence that ALJ Lombardo specifically identifies as supportive of an ability to perform light work is Dr. Hoffman's observation that Plaintiff continues to experience "some continued pain in the right elbow." (Tr. 867-868).

There are several indications in the decision that ALJ Lombardo's finding that Plaintiff can maintain fulltime light work is based primarily upon her own assessment of Plaintiff's daily activities. For example, ALJ Lombardo notes that "the record reflected substantial activities of daily living" which "is evidence of significant physical functioning (reasonably within a reduced range of light work as established by the residual functional capacity) and also evidence that pain did not interfere substantially with enjoying multiple hobbies and interests." (Tr. 869).

ALJ Lombardo's reliance on her own analysis of Plaintiff's routine activities is error for two reasons.

First, an ALJ is not permitted to substitute her own lay opinion for the opinion of medical experts. *Hall*, 314 F.2d at 690. The record before ALJ Lombardo contained at least a dozen different medical expert opinions regarding Plaintiff's functioning. Rather than analyzing and explaining which portions of these opinions are consistent or inconsistent with the evidence of record, assigning weight accordingly, and shaping an RFC around that allocation of weight, ALJ Lombardo instead crafted Plaintiff's RFC

-27-

around what she thinks Plaintiff can do based on her understanding of his daily activities. This method is inconsistent with the legal standard.

Second, ALJ Lombardo's conclusions regarding Plaintiff's daily activities are flawed. Rather than actually reviewing and commenting on the transcript of Plaintiff's testimony at the 2008 hearing before ALJ Padilla, ALJ Lombardo instead simply copies and pastes the summary of claimant's testimony directly from ALJ Padilla's decision. (Tr. 869-870). ALJ Padilla's summation of Plaintiff's daily activities is not evidence, particularly where it is contradicted by Plaintiff's testimony and the observations of medical professionals. Even if this summation were evidence, however, the ability to perform intermittent and interrupted daily functions such as driving, grocery shopping, or chores, is not evidence of an ability to perform substantial gainful activity. *Walston v. Gardner*, 381 F.2d 586-587 (6th Cir. 1967). Additionally, ALJ Lombardo finds that Plaintiff's activities are far more extensive than alleged. For instance, ALJ Lombardo finds that Plaintiff plays poker with friends, does yard work, goes fishing, gardens, and eats out. (Tr. 869). However, there is no evidence in the record to illustrate that these activities are performed anything but intermittently with significant limitations from Plaintiff's mental and physical impairments. ALJ Lombardo cannot identify substantial evidence which establishes that Plaintiff enjoys multiple hobbies/interests without substantial interference from pain. At the very least, ALJ Lombardo fails to explain why she finds Plaintiff's allegations that those activities are limited not to be credible.

-28-

Accordingly, substantial evidence does not support the ALJ's denial of benefits. The opinions of Drs. Johnson, Hofmann, Gomaa, Franklin, Ross, Reed, Bromber, Ramirez, and Smith compel a finding that Plaintiff is at best limited to sedentary work.[7] Accordingly, the Court finds that Plaintiff was disabled as of his fiftieth birthday (September 29, 2006).[8]  (Tr. 341, 697, 562-566, 707, 680-685, 814, 942, 791-793).

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.  The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

---

[7] Sedentary work is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. §§ 404.1567(a), 416.967(a).

[8] *See* Rule 201.02 of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, Subpt. P, App.2, Tab. 1, dictates a finding of disability in the absence of transferrable skills for a person age 50-54, is a high school graduate, is limited to sedentary work, and has no direct entry into skilled work.

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985).  Such is the case here.

Here proof of disability <u>is</u> overwhelming and remand will serve no purpose other than delay.  As fully recited herein, in view of the extensive medical record of evidence of disability, and the credible and controlling findings and opinions of Drs. Hoffman, Franklin, Johnson, Gomaa, and Ross, the ALJ failed to meet its burden that Plaintiff is able to engage in substantial gainful activity, and proof of disability is overwhelming.

### IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Jeffrey Gabbard was not entitled to disability insurance benefits and supplemental security income beginning September 29, 2006, is hereby found to be **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and it is **REVERSED**; and this matter is **REMANDED** to the ALJ for an immediate award of benefits.  The Clerk shall enter judgment accordingly.


Date: October 30, 2012                               _s/ Timothy S. Black_
                                                                    Timothy S. Black
                                                                    United States District  Judge

-30-